UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 05-60224-CR-LENARD

**UNITED STATES OF AMERICA,**

v.

**BERT DENNIS FREEMAN,**

    Defendant.
_____/

## ORDER DENYING MOTION FOR EARLY TERMINATION OF SUPERVISED RELEASE (D.E. 69)

**THIS CAUSE** is before the Court on Defendant Bert Dennis Freeman's Motion for Early Termination of Supervised Release, filed August 30, 2023. ("Motion," D.E. 69.)[1] The Government filed a Response on September 13, 2023 ("Response," D.E. 71), to which Defendant filed a Reply on September 21, 2023 ("Reply," D.E. 73.) Upon review of the Motion, Response, Reply, and the record, the Court finds as follows.

**I.    Background**

On August 30, 2005, Defendant was indicted for knowingly receiving and attempting to receive material containing child pornography (two videotapes identified as "# 7" and "# 23"), in violation of 18 U.S.C. §§ 2252A(a)(2) and (b)(1), and knowingly and intentionally possessing material containing child pornography (videotapes "# 7" and "#

---

[1] Defendant also filed supporting exhibits. On September 14, 2023, he submitted character letters from his wife ("Wife's Letter," D.E. 72-3), past employer (D.E. 72-2), and present employer (D.E. 72-1.) On September 22, 2023, Defendant submitted a letter personally addressing the Court. ("Defendant's Letter," D.E. 74-1.)

23"), in violation of §§ 2252A(a)(5)(b) and (b)(2).  (D.E. 10.)  Defendant pled guilty to both counts on November 18, 2005.  (D.E. 29.)

According to the Presentence Investigation Report ("PSR"), Defendant was arrested after ordering, receiving, and submitting payment for two child pornography videos, in response to an advertisement on the internet.  (PSR ¶¶ 5–8.)  After his arrest, federal agents also found 83 files of child pornography on his computer hard drive, 68 of which were analyzed and confirmed by agents to involve actual children.  (Id. ¶ 9.)

Prior to sentencing, Defendant submitted a Sex Offender Evaluation Report authored by Dr. Eric Imhof, a certified provider of sex offender treatment.  ("Report," D.E. 41) (under seal.)  The Report details 14 online conversations that Defendant engaged in with apparent twelve to seventeen year old girls and parents of minor children.  (Id. at 3–6.)

At the sentencing hearing, the Court determined that Defendant faced an advisory Guidelines imprisonment range of 70 to 87 months, and a supervised release range of any term of years or life.  ("Sentencing Hearing Transcript," D.E. 51-1 at 5:22–25, 6:1–12.) Defendant made no objections to the PSR or to the application of the Guidelines.  (Id. at 6:13–15.)  The Court directed that the details of 14 chatroom conversations between Defendant and other individuals be included in the PSR as relevant conduct, to which there was no objection.  (Id. at 7:6–25, 8:1–4.)[2]  Dr. Imhoff testified as an expert witness for the defense that Defendant had paraphilia, a condition in which an individual has engaged in

---

[2] The PSR was not revised to include the details of the chatroom conversations; however, they are a part of the record through Dr. Imhoff's Report and the sentencing transcript.

2

"sexual thoughts, urges or behaviors involving ... children" for more than six months. (Id. at 11:22–23.) Dr. Imhoff also opined that Defendant was treatable, had accepted responsibility, and "present[ed] a low risk for a hands-on offense." (Id. at 14:7–8.) Dr. Imhoff was then extensively cross-examined by the prosecutor and thoroughly questioned by the Court concerning the foundation for his opinion regarding Defendant's low risk for recidivism. (Id. at 15–37.)

The Court also heard testimony from Defendant, his counsel, and his mother who urged the court to "allow [Defendant] to be continued to be monitored, if it's possible, without sending him far away." (Id. at 43:25, 44:1–2.) Defense counsel argued for the Court to impose a lesser imprisonment sentence, and in doing so noted that the Court had "unlimited power in terms of supervised release," which would "be an opportunity to make sure that [Defendant] [was] progressing on the right track" and "would be something that [Defendant would] have to live with." (Id. at 41:3–7.)

The Court, after considering the aforementioned evidence, along with the advisory Guidelines range of 70 to 87 months' imprisonment and the specified factors of 18 U.S.C. § 3553(a), sentenced Defendant to a 75-month term of imprisonment followed by a life term of supervised release. (Id. at 47:7–22.) The Court stated that the supervised-release portion of Defendant's sentence was "appropriate in this matter based upon [Defendant's] history of deviant sexual conduct, the 83 images of child pornography that were found on his computer, in addition to the offenses for which he stands before the Court and the approximately 14 chatroom conversations in which [Defendant] explicitly discusses and

3

solicits sexual conduct with persons representing themselves to be minor females or the parents of minor females." (Id. at 48:4–12.)

Defendant appealed, and the Eleventh Circuit affirmed his sentence finding "no error based on the district court's § 3533(a) analysis[.]" United States v. Freeman, 194 F. App'x 777, 778 n.1 (11th Cir. 2006).

## II. Legal Standard

The Court may, after considering specified factors under § 3553(a), terminate supervised release if the Court is "satisfied that such action is warranted by the conduct of the defendant released and the interest of justice." 18 U.S.C. § 3583(e)(1). First, under § 3583(e)(1), the defendant must have completed more than one year of supervised release before the Court can consider whether termination is warranted. If the defendant is statutorily eligible, "[t]hen the court determines whether, in its discretion, relief should be granted" based on the specified § 3553(a) factors. United States v. Johnson, 877 F.3d 993, 998 (11th Cir. 2017).

## III. Discussion

Defendant argues that the advisory Guideline's "blanket recommendation of lifetime supervision for all child pornography offenders is problematic because the recommendation applies to *all* child pornography offenders, regardless of whether they are distributors or creators of the child pornography and without analysis as to whether they are likely recidivists." (Mot. at 3 (italics in original).) Defendant further challenges the advisory Guideline's blanket recommendation of lifetime supervision as "Congress increased the child pornography penalties without the Sentencing Commission's normal

input and without the support of empirical evidence." (Id. at 4.)[3] Finally, Defendant argues that his "conduct both before and after his conviction indicate that he is not likely to be a recidivist." (Id. at 7.) Defendant notes that Dr. Imhoff opined "that with treatment [Defendant] was a low-risk of being a recidivist and extremely unlikely to commit a future 'contact offense.'" (Id. at 8.) Defendant further cites his successful completion of treatment and over 12 years of supervised release along with his stable career and marriage. (See id. at 7–9.)

The Government, while congratulating Defendant on his successes, argues that his adherence to the conditions of supervised release does not warrant early termination as "it is simply the minimum expected of an individual under supervision." (Resp. at 3.) The Government further argues that the specified § 3553(a) factors "weigh decidedly against early termination[,]" and that "[t]here is no evidence that Probation's supervision hinder the Defendant's development in any way." (Id. at 4–5.)

In his Reply, Defendant argues that the Government ignores his arguments concerning the Guideline's problematic blanket recommendation of lifetime supervised

---

[3] Defendant refers to the Prosecutorial Remedies and Other Tools to end the Exploitation of Children Today (PROTECT) Act of 2003. The PROTECT Act increased the supervised release range to a minimum of five years and a maximum of life for child pornography offenders. See 18 U.S.C. § 3583(k). Defendant argues that:

> Both before and after the PROTECT Act, the sentencing guidelines have instructed judges to impose at least the statutory minimum term and, as a policy statement, have 'recommended . . . the statutory maximum term of supervised release' for all defendants convicted of 'a sex offense,' including child pornography offenses in 18 U.S.C. § 2252 & 2252A. So, after the PROTECT Act, this recommendation was now lifetime supervised release.

(Mot. at 3.)

release and attempts to defeat his "request for early termination by highlighting the troubling titles of the child pornography he possessed almost twenty years ago." (Reply at 1.) Additionally, in his Letter to the Court, Defendant claims his development has been hindered by supervised release because of a "prolonged delay" in his transfer request to the Middle District of Florida that "came close to costing [him] the position within the company that [he] was transferring to accept." (Defendant's Letter at 1.)

The Court first finds that Defendant is statutorily eligible to be considered for early termination as he has been on supervised release for more than one year. (See Resp. at 3.) However, based on the following, the Court in its discretion finds that early termination should not be granted.

### A. Defendant's Challenges to the Advisory Guideline's Recommendation of Lifetime Supervised Release[4]

As stated, the PROTECT Act of 2003 increased the supervised release range to a minimum of five years and a maximum of life for child pornography offenders. See 18 U.S.C. § 3583(k). Defendant's argument that the increased penalties were passed "without the Sentencing Commission's normal input and without the support of empirical evidence" is without merit. (Mot. at 4.) Simply put, Congress—the federal legislative branch—passed legislation. Congress did not require the input of the Sentencing Commission—a federal administrative agency—to do so. See Stinson v. United States, 508 U.S. 36, 45 (1993) (noting that the Sentencing Commission is an administrative agency and its

---

[4] Before addressing the specified § 3553(a) factors, the Court will discuss Defendant's challenges to the PROTECT Act and the advisory Guidelines recommendation of lifetime supervised release.

6

commentary to the Sentencing Guidelines "is akin to an agency's interpretation of its own legislative rules.").)

Defendant's argument concerning the advisory Guideline's "blanket recommendation of lifetime supervision for all child pornography offenders" is also without merit. (Mot. at 3.)[5] Lifetime terms of supervised release are reasonable in child pornography cases so long as the sentencing court conducts an individualized determination based on the specified § 3553(a) factors. See United States v. Cubero, 754 F.3d 888, 898–99 (11th Cir. 2014) (holding that the defendant's lifetime term of supervised release was procedurally and substantively reasonable and the Sentencing Commission's report to Congress criticizing child pornography sentencing guidelines did not make defendant's sentence unreasonable).) Here, the Court made such an individualized determination at the time of sentencing. See Freeman, 194 F. App'x at 778 (affirming Defendant's sentence finding no error based on the Court's § 3553(a) analysis).)[6] The Court now makes another individualized determination in deciding the instant Motion.

---

[5] Defendant relies heavily on a concurring opinion in a Ninth Circuit case. (See Mot. at 3–4, 6.) That opinion, while containing dicta critical of the advisory Guideline's blanket recommendation, ultimately concurs in affirming a sentence of lifetime supervised release. See United States v. Apodaca, 641 F.3d 1077, 1085 (9th Cir. 2011) (Fletcher, J. concurring) ("Because the district court committed no procedural error and sentenced Apodaca to the lifetime term of supervised release recommended by the Guidelines, our precedents require us to affirm Apodaca's sentence.") The dicta in this Ninth Circuit concurrence is not binding on the Court.

[6] Defendant also cites several out-of-circuit cases where district courts were reversed for committing errors at sentencing in child pornography cases. See United States v. Dorvee, 616 F.3d 174, 176 (2d Cir. 2010) ("Our review of the record indicates that the district court never properly calculated Dorvee's Guidelines range which, we conclude, constitutes procedural error. We also conclude that the sentence imposed on Dorvee is substantively unreasonable."); United States v. Alvarado, 691 F.3d 592, 598 (5th Cir. 2012) (district court reversed for not making an individualized determination of whether lifetime supervision was warranted.) These cases are

**B.     Section 3553(a) Analysis, Defendant's Conduct, and the Interest of Justice**

The Court must consider "the nature and circumstances of the offense and the history and characteristics of the defendant" in imposing "a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2)[.]" 18 U.S.C. § 3553(a)(1). Those purposes include:

(2) the need for the sentence imposed—

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B) to afford adequate deterrence to criminal conduct;

(C) to protect the public from further crimes of the defendant; and

(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner[.]

18 U.S.C. § 3553(a)(2)(A)–(D). The seriousness of the offense is apparent from the sentencing transcript and was considered by the Court in imposing the prison portion of Defendant's sentence. Because Defendant is on supervised release, primacy is placed on the purposes of deterrence and protecting the public.

The Court first notes that the relevant conduct in this case showed a pattern of behavior more egregious than the charges of conviction. In other words, this case involved more than viewing and possessing child pornography. As discussed, Defendant engaged in 14 sexually solicitous chatroom conversations with apparent twelve to seventeen year

---

inapposite as Defendant's sentence was affirmed by the Eleventh Circuit on appeal. See Freeman, 194 F. App'x at 778.

old girls and parents of minor children.[7]  Defendant also expressed interest in sexual activity between fathers and young daughters.  (Id. at 6 ("[Defendant] engaged an individual, presenting as a young female of unspecified age, in a conversation about her sexual activity with her father.").)  Moreover, in two conversations, Defendant discussed specific plans to meet underage girls.[8]  The defense's expert witness found that these conversations constituted "grooming."[9]

---

[7] In conversation numbers 2, 3, 4, 5, 8, 9, 13, and 14, Defendant posed as a photographer and sought to take nude photographs of the underage girls.  (See Report at 3–6.)  For example, in conversation number 2:

> [Defendant] posing as a photographer, engaged an individual, identifying them self as a thirteen year old female, in a conversation about her posing in the nude and that she could earn up to 1,000 dollars an hour.  He stated he became a photographer because he likes to see young girls naked and described engaging in sexual relations with some of his young models.  He appeared to engage in conversations to establish rapport with the individual and encouraged delinquent or inappropriate behaviors including consuming alcohol and skinny dipping with other boys and girls.  He stated the age of consent was "…the government telling you about your own body" and that he would be "…gentle and considerate…" with her.

(Id. at 4.)

[8] In conversation number 3, Defendant "attempted to arrange a meeting at a local shopping mall" with a thirteen-year-old girl interested in becoming a model.  (Id. at 4.)  However, "[a]fter not hearing from her for a while, [Defendant] wrote 'I assumed your parents found out and were hunting me.'"  (Id.)  In conversation number 6, Defendant engaged an apparent father of a minor female child and "discussed traveling to meet them at which time he planned to engage the girl in penile-oral, vaginal, and oral-vaginal intercourse and discussed taking a picture of the girl performing oral intercourse on him while engaging the other individual in penile-vaginal intercourse." (Id. at 5.)

[9] Dr. Imhoff defined "grooming" as "essentially setting up an individual to commit a sexual offense against them."  (Sentencing Tr. at 17:6–7.)  Dr. Imhof agreed that Defendant's chatroom conversations with apparent minor females were "sexual solicitous" and "appeared to be grooming type of behaviors[.]"  (Id. at 17:17–20.)

9

The fact that Defendant was not a purely pornographic offender weighs heavily against early termination of supervised release. As stated, the relevant conduct in this case involves more than viewing and possessing child pornography. Here, Defendant actively solicited underage girls online. The Court finds that Defendant's statements in the 14 chatroom conversations evince a need for continued monitoring. Supervised release is necessary to deter Defendant from reverting to old patterns. Additionally, Defendant's sexually solicitous conduct creates a substantial risk to the public going forward. As such, continued monitoring is necessary both "to afford adequate deterrence" and "to protect the public from further crimes of the defendant[.]" 18 U.S.C. § 3553(a) (2)(B), (C).

Regarding Defendant's risk of recidivism, Dr. Imhoff's assessment spoke only to Defendant's risk of reoffending with a "contact" or "hands-on" crime. (Report at 22:20–23.) The Court is concerned with both contact and non-contact offenses and underscores that possession of child pornography is not a victimless crime. Dr. Imhoff was also unable to provide an <u>individualized</u> assessment of Defendant's recidivism risk. The doctor's assessment focused on the limited available research—mostly involving contact offenders—while not addressing the predilections and risk of the specific Defendant before the Court.

In his Motion, Defendant updates Dr. Imhoff's risk assessment with a study conducted by the United States Sentencing Commission. The study found that the recidivism rate for offenders convicted of non-production child pornography charges "was 30% (for any supervised release violation) and 7% for sexual contact crimes." (Mot. at

6.)[10]   These statistics fail to persuade—and again, fail to address the Defendant individually.

The Court further notes that Defendant's submissions focus on his successful career and stable marriage.  Defendant has worked for an auto parts supply store since 2017.  (See Mot. at 7.)  He started in an entry level position and worked his way up to Plant Manager. (See Defendant's Letter at 1.)  Defendant's wife feels "deeply that he has learned from his mistake" and notes that he "has complied with all conditions of his treatment and supervision."  (Wife's Letter at 1.)  The Court commends Defendant's personal and professional achievements.  That said, personal and professional success, though relevant, is not the criteria for early termination.

Defendant's submissions omit any reference to his past.  Also missing is any display of remorse or mention of the child victims.  "Child pornography harms and debases the most defenseless of our citizens."  United States v. Williams, 553 U.S. 285, 307 (2008).  Defendant's personal and professional achievements do not erase the harm to the child victims and the need to protect other potential victims.  Defendant seeks to move on, but the interest of justice requires continued supervision.

In his Letter, Defendant complains of purported hardships and argues that early termination is warranted based on the undue burdens the Court and Probation have placed upon him.  As discussed, Defendant claims he was almost passed over for a promotion

---

[10] Defendant also cites a related study that compared contact and non-contact child pornography offenders.  Defendant does not cite any statistics from the study, but states that "[t]he study found that non-sexual contact sex offenders were substantially less likely to get arrested again or use drugs, while substantially more likely to be employed and more educated."  (Id.)

11

because of a "prolonged delay" in his transfer request to the Middle District of Florida. (Defendant's Letter at 1.)  His argument fails to persuade.  Since commencing supervised release, Defendant has resided in the Southern, Northern, and Middle Districts of Florida and the Western District of Tennessee before his recent move to Kansas.  (See Resp. at 3.) The record shows that Probation has accommodated Defendant's many transfer requests to other jurisdictions for employment growth.

The Court, however, finds that Defendant's frequent relocations create added concerns for the safety of the community.  As discussed, Defendant moved to Kansas in January 2023.  Neither his current probation officer nor his prior one in Tennessee were able to offer a position on early termination due to the short amount of time they supervised Defendant.  (See id.)  This factor vitiates against early termination.  Considering the seriousness of the offense and underlying relevant conduct, the Court finds that continued monitoring is necessary to ensure that Defendant has not fallen through the cracks.

Finally, the Court agrees with the Government that Defendant's compliance with the terms of supervised release is not enough.  "Full compliance, after all, is merely what is expected of all people serving terms of supervised release."  United States v. Reisner, No. 406-CR-077-SPM, 2008 WL 3896010, at *1 (N.D. Fla. Aug. 20, 2008) (quoting Karacsonyi v. United States, 152 F.3d 918 (2d Cir. 1998)).

### IV. Conclusion

The Court, having considered the specified § 3553(a) factors, concludes that early termination of supervised release is not warranted "by the conduct of the Defendant," nor is it in "the interest of justice."  18 U.S.C. § 3583(e)(1).

Accordingly, it is **ORDERED AND ADJUDGED** that Defendant's Motion for Early Termination of Supervised Release (D.E. 69) is **DENIED**.

**DONE AND ORDERED** in Chambers at Miami, Florida this 26th day of October, 2023.

_/s/ Joan A. Lenard_
**JOAN A. LENARD**
**UNITED STATES DISTRICT JUDGE**